UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROB ROY MARTIN, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, <br> Commissioner of Social Security, <br><br> Defendant. | No. CV-10-5028-JPH <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 16, 19.) Attorney Thomas Bothwell represents plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents defendant. The parties have consented to proceed before a magistrate judge. (ECF No. 7.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** plaintiff's Motion for Summary Judgment and **GRANTS** defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Rob Roy Martin (plaintiff) protectively filed for social security income (SSI) and disability insurance benefits (DIB) on July 17, 2006. (Tr. 35, 120, 123, 145.) Plaintiff alleged an onset date of May 31, 2006. (Tr. 120, 123.) Benefits were denied initially and on reconsideration. (Tr. 79, 84.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Paul Gaughen on January 28, 2009. (Tr. 35-74.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 44-45, 57-67.) Medical expert Dr. R. Thomas McKnight and vocational expert Mr. McKinney also testified. (Tr.45-56, 67-73.) The ALJ denied benefits (Tr. 9-23) and the Appeals

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -1

Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 52 years old at the time of the hearing. (Tr. 37.) He graduated from high school and has a bachelor's degree in communication, theater fine arts, with a minor in French. (Tr. 44.) Plaintiff has work experience as a nurse assistant, hotel manager, and food services worker and supervisor. (Tr. 56.) He last worked as a shift supervisor at a McDonald's. (Tr. 60.) Plaintiff testified he cannot work because of bipolar disorder. (Tr. 60.) He testified the medication he takes for mental impairments makes him unable to focus. (Tr. 60.) He says he displays aggressive behavior, gets depressed and agitated, argues with staff, and is unable to do his job. (Tr. 60.) He testified he was discharged from his last job because of complaints from other staff members that he was aggressive and was not getting along with them. (Tr. 60-61.) He did not follow instructions, angered easily, and displayed poor judgment and behavior. (Tr. 60.) Plaintiff also testified he uses a cane because he has rheumatoid arthritis in his knee. (Tr. 62.) He says he has to lay down every day for a couple of hours to rest his knee and because of his medications. (Tr. 65.) He is also an insulin dependent diabetic. (Tr. 66.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch

inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since May 31, 2006, the alleged onset date. (Tr. 11.) At step two, he found Plaintiff has the following severe impairments: diabetes mellitus, obesity and affective disorder. (Tr. 11.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 18.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can do work requiring occasional postural adjustments, such as climbing ramps or stairs, stooping, kneeling, crouching and crawling. He can understand and remember simple instructions and procedures and engage in routine or perfunctory social interaction. Over time, as coworkers become more familiar to him, he can do limited collaborative type work, but not work with the general public.

(Tr. 19.) At step four, the ALJ found plaintiff is unable to perform any past relevant work. (Tr. 22.) Based on plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ determined that if plaintiff stopped the substance use, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 22.) As a result, the ALJ concluded plaintiff has not been under a disability, as defined in the Social Security Act, from May 31, 2006 through the date of the decision. (Tr. 23.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ erred by: (1) rejecting impairments as not severe at step two; (2) rejecting the opinions of treating and examining medical providers; (3) failing to consider the combined impact of all of plaintiff's impairments; and (4) failing to identify specific jobs available to plaintiff at step five. (ECF No. 17 at 14-20.) Defendant asserts the ALJ: (1) made a proper step two finding; (2) properly considered the medical and psychological opinion evidence; (3) made a proper RFC finding; and (4) properly relied on the vocational expert's testimony at step five. (ECF No. 19 at 5-20.)

**DISCUSSION**

**1.    Step Two**

Plaintiff argues the ALJ should have determined that plaintiff's knee impairment, bipolar disorder, anxiety and panic disorder are severe impairments. (ECF No. 17 at 14-15.) At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To satisfy step two's requirement of a severe impairment, the claimant must

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549050 (9th Cir. 1985).

The Commissioner has passed regulations which guide dismissal of claims at step two. Those regulations state an impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." S.S.R. 85-28. The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." S.S.R. 85-28. Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting." *Id.*

Further, even where non-severe impairments exist, these impairments must be considered in combination at step two to determine if, together, they have more than a minimal effect on a claimant's ability to perform work activities. 20 C.F.R. § 416.929. If impairments in combination have a significant effect on a claimant's ability to do basic work activities, they must be considered throughout the sequential evaluation process. *Id.* As explained in the Commissioner's policy ruling, "medical evidence alone is evaluated in order to assess the effects of the impairments on ability to do basic work activities." S.S.R. 85-28. Thus, in determining whether a claimant has a severe impairment, the ALJ must evaluate the medical evidence.

**a. Knee Pain**

Plaintiff argues "very significant" limitations due to knee pain are supported by the record. (ECF No. 17 at 15.) In 2004 and 2005, plaintiff reported walking two to five miles per day. (Tr. 235,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -6

240, 251.) In July 2006, plaintiff indicated his knees prevent him from working because they are stiff and painful. (Tr. 143.) His treating physician, Dr. Chiou, noted plaintiff had slight tenderness over the bilateral knee area but no crepitus, deformity or swelling. (Tr. 269.) Plaintiff used a cane to ambulate and it was hard for him to squat, but Dr. Chiou indicated he ambulated okay. (Tr. 269.) Dr. Chiou completed a DSHS Physical Evaluation form and indicated that bilateral knee osteoarthritis moderately interferes with plaintiff's ability to do work-related activities. (Tr. 270.) He opined that plaintiff was capable of light duty work. (Tr. 272.) A September 2006 x-ray of the right knee showed minimal degenerative changes and an October 2007 x-ray of the left knee showed early osteoarthritic changes. (Tr. 286, 622.) In November 2007, plaintiff indicated he had been "power walking" when he had left knee pain. (Tr. 580.) The ALJ pointed out that plaintiff was never referred for orthopedic consultation or treated for knee pain, although he was given a knee brace upon his request.[1] (Tr. 580-81.) By December 2007, knee pain was not mentioned among plaintiff's complaints. (Tr. 578.) In April 2008, plaintiff complained of knee pain, but there is no significant mention of knee pain during the rest of 2008. (Tr. 549-77.) The ALJ observed that while plaintiff was noted to use a cane, there is no evidence the cane was prescribed. (Tr. 18.) Based on the foregoing, the ALJ concluded plaintiff's knee impairment causes no more than a minimal limitation upon his ability to do work-related activities. (Tr. 12-18.)

The only evidence cited by plaintiff regarding his knee impairment is a record dated April 18, 2008 from Ernest Segren, PA-C, a treating provider.[2] (ECF No. 17 at 3, 14-15.) Mr. Segren noted that plaintiff indicated his primary disability was severe bipolar disorder. (Tr. 568.) His "other disability" is based on "chronic lumbar and thoracic back pain, bilateral knee arthralgias and a history of degenerative joint disease to these joints." (Tr. 568.) Mr. Segren recorded no radiating pain from back to lower extremities or loss of strength or sensation. (Tr. 568.) However, Mr. Segren opined that "in accompaniment with his obesity, his ambulatory capacity is definitely impeded and he is marginally flexible in regard to his back." (Tr. 568.) It was also noted that the chronic lumbar and

---

[1] It is also noted that plaintiff indicated he preferred to use ibuprofin for knee pain. (Tr. 580.)

[2] Mr. Segren indicated plaintiff came in for a DSHS evaluation. (Tr. 568.) It is noted that no DSHS Physical Evaluation form completed by Mr. Segren is part of the record.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -7

thoracic back pain had no specific precipitating incident and had been present for many years. (Tr. 568.) Mr. Segren indicated that plaintiff is "barely able to do activities of daily living." (Tr. 568.)

The ALJ noted Mr. Segren's records and specifically addressed the April 2008 opinion. (Tr. 16-17, 21.) The ALJ must consider the opinion of a source that is not an acceptable medical source in assessing disability. 20 C.F.R. §§ 404.1527, 416.927 "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). The opinion of an acceptable medical source is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

The ALJ pointed out that the complaint of back pain mentioned in Mr. Segren's notes is seen nowhere else in the record. (Tr. 21.) An ALJ may discount lay testimony if it conflicts with medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). The opinion that plaintiff's ambulation is impeded due to the combination of back pain and obesity is not supported by any other evidence in the record.[3] The ALJ also discounted the opinion because plaintiff's reported activities around that same time show he had never reported difficulty with activities of daily living, despite Mr. Segren's note that he could "barely" handle activities of daily living. (Tr. 21.) Plaintiff's friend reported he is able to prepare complete meals from scratch and needs no assistance with personal care except to keep track of medication. (Tr. 211-12.) He was also noted to do some cleaning with occasional rest periods, laundry and apartment chores. (Tr. 212.) An assessment of plaintiff's needs in December 2007 noted his activities of daily living were adequate. (Tr. 472.) Also in December 2007, plaintiff was baking fresh bread and

---

[3] It is noted that plaintiff was described as "very obese, over 400 pounds" by Dr. Chiou at the time he opined plaintiff's ambulation was okay and he is capable of light work. (Tr. 268.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

preparing for the holidays. (Tr. 484.) He took a short trip in May 2008 to meet with former coworkers and reported touring a flight museum while on vacation. (Tr. 442, 452 524.) He was preparing for a garage sale in July 2008. (Tr. 436.) These activities are reasonably construed as inconsistent with someone so disabled they can "barely" manage activities of daily living. The reasons cited by the ALJ in rejecting Mr. Segren's opinion are germane and are supported by substantial evidence. Since Mr. Segren's notes are the only evidence suggesting significant interference with plaintiff's abilities due to knee pain and the ALJ properly rejected the opinion, it was reasonable for the ALJ to conclude the evidence does not support a finding that plaintiff's knee pain constitutes a severe impairment.

Even if the ALJ should have identified plaintiff's knee pain as a severe impairment, any error is harmless. As long as there is substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination, the error is harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). Plaintiff's treating physician, Dr. Chiou, opined that osteoarthritis in plaintiff's knee was a moderate impairment and that plaintiff could perform light work despite such impairment. (Tr.272.) Dr. Chiou is the only treating physician who assessed plaintiff's knee pain and his opinion is consistent with the RFC. Because the RFC finding is based on the ability to do light work, any error in failing to include plaintiff's knee pain as a severe impairment is harmless and would not affect the RFC or ultimate nondisability finding.[4]

---

[4]Plaintiff notes the opinion of Dr. Staley, a reviewing physician. (ECF No. 17 at 3, ECF No. 20 at 7.) In October 2006, Dr. Staley opined that plaintiff was capable of occasionally and frequently lifting 10 pounds, which plaintiff notes is consistent with a sedentary level of exertion. (ECF No. 17 at 3, Tr. 306.) However, in January 2007, Dr. Scottolini reviewed the file and assessed plaintiff as capable of occasionally lifting 20 pounds and frequently lifting 10 pounds. (Tr. 344.) Dr. Scottolini noted that an error was made in the October 2006 review in that the RFC was for light activity level, although the box for occasional lifting was marked 10 pounds rather than 20 pounds. (344.) Indeed, Dr. Staley twice noted evidence supporting a finding of light work. (Tr. 311-12.) Thus, the October 2006 opinion does

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

### b. Mental Impairments

Plaintiff argues the record supports significant limitations due to bipolar disorder, anxiety and panic disorder, and that the ALJ erred by failing to include those conditions as severe impairments. (ECF No. 17 at 15.) First, the ALJ did recognize plaintiff's bipolar disorder as a severe impairment because bipolar disorder is encompassed by the term "affective disorder." *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 12.04. Second, the ALJ considered and rejected anxiety and panic disorder for several reasons. The ALJ observed that plaintiff's description of anxiety to various examiners generally involved situational factors. (Tr. 18.) For example, plaintiff complained of anxiety when preparing to move, going to school, under stress, when he had dental issues, or when worried about SSI. (Tr. 235, 245, 364, 366, 378, 640, 656, 669.) The ALJ also pointed out that the medical expert, Dr. McKnight, testified that he did not see descriptions of anxiety or obsessive-compulsive symptoms supporting those diagnoses.[5] (Tr. 18, 47.) Indeed, obsessive-compulsive disorder is

---

not support plaintiff's contention that a sedentary work level is supported by the record. Furthermore, Dr. Staley's assessment does not support plaintiff's assertion that knee pain is a severe impairment. The only box checked by Dr. Staley inconsistent with light work involves lifting and carrying, not walking, standing or sitting which are functions more likely to be limited by a knee impairment. Additionally, even if Dr. Staley did not make an error and the ALJ overlooked the inconsistency, Dr. Scottolini's assessment conflicts with Dr. Staley's evaluation. It is the ALJ's duty is to resolve evidentiary conflicts, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1985), and he reasonably resolved the conflict between the reviewing physicians by accepting Dr. Scottolini's assessment. Any error in discussing the evidence would be harmless as it does not affect the ultimate nondisability outcome. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

[5]Credibility is a significant issue in this case. Dr. McKnight testified that on its face, the record indicates a serious psychiatric problem. (Tr. 45.) Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) If there is evidence of a medically determinable

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

mentioned only in the evaluations of Mr. Hurst and Mr. Pharaoh, whose opinions were properly rejected by the ALJ, discussed *infra*. (Tr. 21, 405-08, 673-78.) Based on the foregoing, the ALJ did not err by failing to identify anxiety disorder, panic disorder, or obsessive-compulsive disorder as severe impairments.

**3.     Opinion Evidence**

    **a.     Dr. Kouzes**

Plaintiff argues the ALJ improperly rejected the opinion of Dr. Kouzes. (ECF No. 17 at 16-17.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

---

impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ cited substantial evidence supporting the finding that plaintiff is not credible, including the testimony of Dr. McKnight who pointed out numerous inconsistencies in the record indicating plaintiff is not credible about his education and work experience, which calls into question his credibility about everything else. (Tr. 47.) The ALJ made additional observations of inconsistencies suggesting plaintiff is not credible. (Tr. 17, 20-21.) Plaintiff does not challenge the credibility finding.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -11

Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

Dr. Kouzes examined plaintiff and completed a DSHS Psychological/Psychiatric Evaluation form on August 8, 2006. (Tr. 262-67.) Dr. Kouzes diagnosed bipolar disorder and assessed three moderate cognitive limitations and two marked and three moderate social limitations. (Tr. 264.) The ALJ noted Dr. Kouzes indicated plaintiff was cognitively able with normal memory and concentration skills and opined that plaintiff would improve with treatment. (Tr. 12, 21.) Rather than rejecting Dr. Kouzes' opinion as plaintiff asserts, the ALJ seems to have accepted Dr. Kouzes' specific findings and cited additional evidence consistent with the Dr. Kouzes' comments. (Tr. 21.) The ALJ pointed out that Dr. Grindlinger indicated plaintiff was generally stable throughout treatment and the treatment recommendations remained unchanged over time. (Tr. 21, 370, 375, 382, 385, 395.) Similarly, the ALJ pointed out that therapists at Catholic Family Services recommended no changes in medication and noted plaintiff was doing well overall. (Tr. 21, 449, 467, 472, 476, 495, 504.) The marked and moderate limitations assessed by Dr. Kouzes are inconsistent with the narrative comments and the ALJ properly resolved the inconsistency. It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Furthermore, individual medical opinions are preferred over check-box reports. *See*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

*Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). Dr. Kouzes' narrative conflicts with boxes checked on the DSHS form. The comments regarding cognitive factors are mostly positive, noting no evidence or symptoms of thought disorder, hallucinations or delusions, train of thought was relevant and appropriate, and thinking was logical and goal directed. (Tr. 264.) Dr. Kouzes noted insight was "mildly" impaired with regard to self understanding. (Tr. 264.) With respect to social factors, Dr. Kouzes noted plaintiff said dealing with others at work was "difficult" and he does not plan to return to work "ever." (Tr. 264.) However, this is plaintiff's own statement and the ALJ concluded plaintiff is not credible. The court can reasonably infer the ALJ resolved any apparent conflict in the evidence by accepting Dr. Kouzes' comments rather than the check-box moderate and marked limitations on the DSHS form. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). This is consistent with other evidence in the record and with precedent indicating a preference for narrative explanations over check-box assessments. The narrative comments are adequately reflected in the RFC as nonexertional limitations on dealing with the public and coworkers. As a result, the ALJ did not err with respect to Dr. Kouzes' opinion.

  **b.**  **Mr. Hurst and Mr. Pharaoh**

Plaintiff argues the ALJ improperly rejected the opinions of Jeff Pharaoh, MHP, and Joshua Hurst, MHP. (ECF No. 17 at 17.) Mr. Pharaoh completed a DSHS Psychological/Psychiatric Evaluation form on April 14, 2008. (Tr. 405-08.) He diagnosed bipolar disorder mixed with agoraphobia, generalized anxiety disorder, and obsessive-compulsive disorder with anxiety and mood disorder and assessed a GAF of 55.[6] (Tr. 406.) Mr. Pharaoh assessed one marked and two moderate cognitive limitations and three marked and one moderate social limitations. (Tr. 407.) Mr. Hurst started seeing plaintiff in April 2008 and completed a DSHS Psychological/Psychiatric Evaluation form in December 2008. (Tr. 445, 673-78.) Mr. Hurst diagnosed bipolar disorder with agoraphobia,

---

[6]A GAF score of 51-60 indicates moderate symptoms or any moderate impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

generalized anxiety disorder, and obsessive-compulsive personality disorder. (Tr. 674.) He assessed one moderate and one marked cognitive limitation and three marked social limitations. (Tr. 675.) The ALJ gave no weight to either evaluation. (Tr. 21.)

As discussed *supra*, the ALJ must consider the opinion of a source that is not an acceptable medical source and must give reasons germane to other source evidence before rejecting it. 20 C.F.R. §§ 404.1527, 416.927; *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993). The ALJ gave several reasons for rejecting the opinions of Mr. Pharaoh and Mr. Hurst. (Tr. 21.)

First, the ALJ noted the evaluations were check-box forms and that no testing or review of the record was done by either mental health professional. As noted *supra*, opinions on check-box forms or form reports which do not contain significant explanation of the basis for the conclusions may accorded little or no weight. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Johnson v. Chater*, 87 F.3d 1015, 1018 (9th Cir. 1996). Relevant factors in evaluating a medical opinion are the amount of evidence supporting the opinion and the quality of the explanation provided in the opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). There are no notes or office visit records from Mr. Pharaoh other than the DSHS evaluation form. The evaluation includes no description of symptoms, nor is there evidence of a mental status exam or records review. (Tr. 405-08.) Likewise, although Mr. Hurst met with plaintiff on a number of occasions, brief explanations on the DSHS evaluation form do not support the moderate and marked boxes checked under cognitive and social functioning. (Tr. 673-76.) The ALJ reasonably concluded the check box forms completed by Mr. Pharaoh and Mr. Hurst are conclusory opinions unsupported by records reviews or other evidence. Thus, the ALJ cited a germane reason for rejecting the evaluations by Mr. Pharaoh and Mr. Hurst.

The second reason cited by the ALJ for rejecting the assessments of Mr. Pharaoh and Mr. Hurst is that the definitions of limitations on the Department of Social and Health Services form differ from the definitions contained in Social Security regulations for assessing mental disorders.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

(Tr. 21.) The ALJ is correct that definitions of the terms rating the severity of various limitations differ. The DSHS form indicates a severe limitations involves the "inability to perform one or more basic work-related activities;" a marked limitation involves "very significant interference with work-related activities;" and a moderate limitation involves "significant interference with work-related activities." (Tr. 197, 279.) Social security regulations indicate a marked limitation is one of such degree "to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 12.00(C)(1). These differences reduce the value of an opinion based on the DSHS definitions in assessing a Social Security disability claim, particularly when there is little narrative explaining the opinion. Although plaintiff argues the difference in state disability criteria is "entirely irrelevant," (ECF No. 17 at 17), the definition of terms is relevant to an ALJ attempting to assess evaluations with little explanatory narrative or supporting evidence. This is therefore a reason germane to the assessments of Mr. Hurst and Mr. Pharaoh.

The ALJ also gave little weight to the DSHS evaluations because the examiners gave credence to plaintiff's self-report of severe anxiety, bipolar disorder or obsessive-compulsive symptoms. (Tr. 21.) A medical opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604. Since plaintiff was determined to be not credible, opinions which appear to be based primarily on plaintiff's own complaint's are of reduced value to the ALJ. Additionally, the medical expert testified that evidence of plaintiff's reported severe anxiety, bipolar disorder and OCD symptoms are poorly defined in the record. (Tr. 47-49.) As discussed *supra,* the opinion of an acceptable medical source is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). Furthermore, the ALJ noted the evidence indicates plaintiff has good memory skills, is oriented in all spheres, and has the capacity to speak French. (Tr. 66, 264.) Inconsistency with medical evidence is also a germane reason for rejecting lay witness evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). The evidence contradicts the conclusions made by Mr. Pharaoh and Mr. Hurst which were apparently substantially based on plaintiff's self-report. In addition to the foregoing, the ALJ also rejected Mr.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15

Pharaoh's opinion because it was based on plaintiff's reports that he was going to give his partner power of attorney because he had a limited ability to "make sound judgment decisions," which the ALJ concluded was a false statement.[7] (Tr. 21, 407.) For these reasons, the ALJ properly discounted their assessments.

The ALJ cited several germane reasons for rejecting the assessments of Mr. Pharaoh and Mr. Hurst. The opinions are generated on check-box forms with little supporting evidence, the definitions of terms , and the fact that both reports are based primarily on plaintiff's own unreliable statements are all germane reasons supported by substantial evidence in the record. As a result, the ALJ did not err by rejecting the opinions of Mr. Pharaoh and Mr. Hurst.

### 3.    RFC - Combination of Impairments and Obesity

Plaintiff argues the ALJ failed to properly consider the impact of plaintiff's obesity on his other impairments. (ECF No. 17 at 18.) The ALJ must examine a claimant's RFC and the physical and mental demands of the claimant's past relevant work at step four of the sequential process. 20 C.F.R. § 404.1520(e). RFC is what an individual can still do despite his or her limitations. S.S.R. 96-8p. The ALJ must consider all of a claimant's medically determinable impairments, including medically determinable impairments that are not determined to be severe. 20 CFR § 404.1545. Although an impairment that is not severe may not significantly limit an individual's ability to do basic work activities, it may be critical to the outcome of a claim when considered with limitations or restrictions due to other impairments. S.S.R. 96-8p

The ALJ found plaintiff's obesity is a severe impairment. (Tr. 11.) Plaintiff argues the ALJ failed to consider that mild osteoarthritis of the knee in combination with obesity can be severely limiting.    (ECF No. 17 at 18-19.) Plaintiff points to the records of PA Segren, who observed that arthritis "definitely impeded" plaintiff's ambulatory ability. (Tr. 568.) As discussed *supra*, the ALJ adequately rejected PA Segren's opinion because it was predicated on complaints of back pain and difficulties with activities of daily neither seen nor substantiated elsewhere in the record. (Tr. 21.) A

---

[7]It is noted that this statement was repeated in Mr. Hurst's evaluation, as well. (Tr. 675.) At least one provider concluded plaintiff showed good judgment and insight. (Tr. 340.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -16

medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The only positive findings noted by Mr. Segren were slight or diffuse or related to squatting only, with no sensation or strength loss.[8] (Tr. 21, 569.) As a result, the opinion of Mr. Segren regarding ambulatory ability was reasonably rejected by the ALJ.

Furthermore, the ALJ accounted for plaintiff's obesity and any limitations due to knee impairment by limiting plaintiff to light work and occasional postural limitations. (Tr. 19.) In the first hypothetical to the vocational expert, the ALJ stated, "He presents with a capacity for light exertion in hypothetical one, due to impairments compounded by a relevant factor of obesity." (Tr. 67.) The vocational expert testified and plaintiff's attorney stipulated that a person with those physical limitations could do a broad range of unskilled light and sedentary work. (Tr. 71.) Under hypothetical two, the ALJ added the limitations that kneeling, crawling, and squatting could be done less than occasionally. (Tr. 71-72.) The vocational expert opined that the occupational job base for unskilled light work would not be eroded by those additional limitations. (Tr. 72.) Thus, the ALJ adequately accounted for obesity in the RFC and hypothetical to the vocational expert. Plaintiff does not point to any evidence of additional limitations due to obesity and knee pain other than Mr. Segren's opinion which was properly rejected by the ALJ. Therefore, the RFC established by the ALJ is supported by substantial evidence.

**4.   Step Five**

Plaintiff argues the ALJ failed to meet his step five burden to identify specific jobs available in significant numbers consistent with plaintiff's functional limitations. (ECF No. 17 at 19-20.) The ALJ properly incorporated the limitations supported by the record in the RFC, as discussed throughout this decision. The ALJ found plaintiff has the capacity for light work subject to some occasional postural adjustments and limited nonexertional limitations. (Tr. 19, 23.) The vocational

---

[8]Dr. Chiou also noted difficulty squatting, but opined that ambulation was okay and plaintiff was capable of light work. (Tr. 269.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -17

expert testified an individual with the limitations identified in the hypothetical would be capable of performing the requirements of a broad range of unskilled light work and that neither the postural limitations or the nonexertional limitations would significantly erode the job base. (Tr. 67-72.) The Medical-Vocational Guidelines take notice of approximately 2,500 medium, light and sedentary unskilled jobs. Where non-exertional limitations would not significantly erode an occupational base, application of the Medical-Vocational Guidelines is appropriate. *Desrosiers v. Secretary of Health and Human Serv's,* 846 F.2d 573, 577 (9th Cir. 1988) ("non-exertional limitations do not automatically preclude applications of the grids"); *Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986); S.S.R. 83-10. Since the evidence supports the conclusion that a broad base of light work jobs are available to plaintiff, the ALJ did not err by failing to identify specific jobs available in the national economy.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(ECF No. 19)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(ECF No. 16)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED August 17, 2011

                S/ JAMES P. HUTTON
            UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -18